Edward BELL and Deborah
Bell, H/W, Appellee,

v.

Andrea KATER, Appellant.

Edward Bell and Deborah Bell,
H/W, Appellants,

v.

Andrea Kater.

Superior Court of Pennsylvania.

Argued June 25, 2003.
Filed Nov. 13, 2003.
Reargument Denied Jan. 22, 2004.

Scott J. Tredwell, Philadelphia, for Kater.

Howard B. Segal, Philadelphia, for Bell.

BEFORE: JOYCE, BENDER and BOWES, JJ.

OPINION BY BENDER, J.:

¶ 1 Andrea Kater, the defendant below (Kater), appeals from the trial court's November 1, 2002 order denying her post trial motions and entering judgment in favor of Edward Bell and Deborah Bell, husband and wife and the plaintiffs below (the Bells). The Bells appeal from the trial court's January 15, 2003 order that granted Kater's petition to file her appeal from the November 1, 2002 order and judgment *nunc pro tunc*. We conclude that Kater's appeal must be quashed as untimely. We further conclude that the Bells' appeal must be dismissed as moot.

¶ 2 A description of the tortuous procedural history of this case follows. The underlying case involves an incident whereby Kater hit Edward Bell with her car in a parking lot. Edward Bell sustained injuries, primarily to his left knee, which required five surgeries. On July 31, 2002, following a jury trial, the jury returned a verdict in favor of the Bells in the

aggregate amount of two million dollars ($2,000,000). On August 12, 2002, Kater filed a motion for post trial relief. On November 1, 2002, the trial court filed an order and opinion denying Kater's post trial motion and entering judgment on behalf of the Bells. The trial court provided notice to the parties of this order and judgment pursuant to Pa.R.C.P. 236.

¶ 3 On December 3, 2002, Kater filed an untimely appeal to this Court from the trial court's November 1, 2002 order and judgment.[1] On the following day, December 4, 2002, Kater filed a petition with the trial court requesting reinstatement of her appeal rights *nunc pro tunc*. In her petition, Kater's attorney explained that, on the day prior to the trial court's issuance of its November 1, 2002 order and judgment, the attorney's regular secretary took a leave of absence. *See* Defendant's Petition for Leave to Appeal *Nunc Pro Tunc*, 12/4/02, at ¶ 8. The attorney explained that a temporary secretary was assigned and trained to file all incoming mail and diary all appropriate orders. *Id.* at ¶ 9. The attorney averred that the November 1, 2002 order and judgment arrived during the time the temporary secretary was being trained, and the attorney inferred that the temporary secretary misfiled the order and judgment. *Id.* at ¶¶ 11–12. The attorney discovered the order and judgment in a different file on the evening of December 2, 2002, and immediately prepared a notice of appeal that was filed the following day, December 3, 2002, as noted above. *Id.* at ¶¶ 12–13. This was the first notice of appeal Kater filed in this case.

¶ 4 On January 15, 2003, the trial court granted Kater's petition for leave to file an appeal *nunc pro tunc*. Notably, at no time did Kater withdraw her first appeal that was pending before our Court. However, coincidentally, on January 15, 2003, *i.e.*, the same date the trial court granted Kater's petition to appeal *nunc pro tunc*, this Court quashed Kater's first appeal as untimely.

¶ 5 On January 27, 2003, Kater filed a second notice of appeal[2] with this Court pursuant to the trial court's order granting her leave to file an appeal *nunc pro tunc* and, on the same date, she also filed a motion for reconsideration with this Court, in which she asked us to reconsider our January 15, 2003 order quashing her first appeal. We denied her motion for reconsideration on February 12, 2003.

¶ 6 Before us now is Kater's second appeal, filed in reliance on the trial court's grant of her petition to appeal *nunc pro tunc*, in which she challenges the trial court's refusal to provide the jury with an adverse inference instruction, the trial court's refusal to grant a new trial, and the amount of damages awarded by the jury to the Bells. Additionally before us is the Bells' appeal, filed on February 3, 2003, in which they challenge the trial court's January 15, 2003 order granting Kater's petition to file an appeal *nunc pro tunc*. We shall first address Kater's appeal, since our conclusions therein are determinative of the Bells' appeal.

■ ¶ 7 We conclude initially that the trial court's January 15, 2003 order granting Kater's petition to file an appeal *nunc pro tunc* is a nullity pursuant to Pa.R.A.P. 1701 and, therefore, Kater's second appeal is untimely. Accordingly, we are compelled to quash.

---

1. We shall at times hereinafter refer to the notice of appeal Kater filed on December 3, 2002, as the "first notice of appeal" or "first appeal."

2. We shall at times hereinafter refer to the notice of appeal Kater filed on January 27, 2003, as the "second notice of appeal" or "second appeal."

¶ 8 Indeed, the procedural history of this case is unusual. Most compelling, however, is the fact that, once Kater filed her first notice of appeal with this Court on December 3, 2002, the trial court was divested of jurisdiction to take further action pursuant to Pa.R.A.P. 1701. Rule 1701(a) provides that "after an appeal is taken ...., the trial court ... may no longer proceed further in the matter." Rule 1701(b) provides certain enumerated exceptions to the general rule provided by subsection (a). For example, after an appeal is taken, the trial court may, *inter alia,* take action to preserve the status quo, correct formal errors in the record, order the record to be transcribed and transmitted, grant leave to proceed in forma pauperis, and "take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding." Pa. R.A.P. 1701(b)(1). Other specific exceptions exist under subsections (b)(2) through (b)(6), including, for example, enforcing any order entered in the matter, granting reconsideration of the order that is the subject of the appeal under certain circumstances, authorize the taking of depositions, and taking actions directed by the appellate court.

¶ 9 Kater fails to address these issues in her appellant's brief. However, in her appellee's brief, in which she argues against the quashing of her appeal, Kater fails to argue that any of the exceptions under Rule 1701(b) apply. In fact, Kater fails to mention the application and effect of Rule 1701 in any significant respect.[3] In any event, Rule 1701 cannot be overlooked. The trial court's order, dated January 15, 2003, which granted Kater leave to appeal *nunc pro tunc,* is a nullity because it was entered at a time when the trial court did not have jurisdiction—*i.e.,* the order was entered *after* Kater filed her first notice of appeal with this Court and *before* the record was remanded to the trial court pursuant to Pa.R.A.P. 2591(a). Rule 2591(a) indicates that Rule 1701(a) "shall no longer be applicable to the matter" once the record is remanded. Since the record had not yet been remanded at the time the trial court entered its order granting Kater's appeal *nunc pro tunc,* the trial court did not have jurisdiction to enter such order and, therefore, such order is void. *See Commonwealth v. Bishop,* 829 A.2d 1170, 1172 (Pa.Super.2003) (concluding that trial court lacked jurisdiction to convene a bail hearing and consider the merits of petition seeking bail where record had not yet been remanded from appellate court).

¶ 10 Moreover, despite Kater's lack of argument to the contrary, we conclude that Rule 1701 provides no exceptions that would have permitted the trial court to enter a valid order granting leave to appeal *nunc pro tunc* following Kater's filing of her first notice of appeal. In other words, we have no basis upon which to conclude that the trial court's order granting leave to appeal *nunc pro tunc* is anything other than a nullity.

---

**3.** Kater's argument with respect to the jurisdiction of the trial court to enter the order granting her petition for leave to appeal *nunc pro tunc* is limited to the assertion that a petition for leave to appeal *nunc pro tunc* may be directed to either the trial court or the appellate court. *See* Kater's Appellee's brief at 6–8. Kater cites *Weiman v. City of Philadelphia,* 129 Pa.Cmwlth. 25, 564 A.2d 557 (1989), which dealt with an appeal from a trial court's denial of the appellant's motion for leave to file an appeal *nunc pro tunc,* but did not present circumstances in which the appellant filed a notice of appeal *prior to* seeking reinstatement of his appeal rights with the trial court. In all, Kater fails to provide any argument pertaining to the application of Rule 1701, which, as we describe herein, is clearly applicable.

¶ 11 We further note that this Court also denied Kater's motion for reconsideration of our January 15, 2003 order quashing her appeal. Kater provides no basis, and we can see no basis, upon which this Court could overturn not only our previous order quashing her appeal, but also our previous order denying her motion for reconsideration of such order.

¶ 12 Since we have determined that the trial court's order granting Kater's petition for leave to file appeal *nunc pro tunc* is a nullity because it was entered after Kater filed her first notice of appeal and before the record was remanded, (*i.e.,* while such appeal was pending in this Court), we need not address the propriety of the trial court's granting of Kater's petition for leave to appeal *nunc pro tunc*. In other words, although both parties concentrate their arguments on whether the trial court properly granted Kater's petition, we need not address such arguments. As such, we make no conclusions about whether the trial court properly granted Kater's petition for leave to appeal *nunc pro tunc*.

█ ¶ 13 In light of the above, and proceeding on the premise that the trial court's order granting Kater's petition for appeal *nunc pro tunc* is a nullity, Kater's second notice of appeal, filed in reliance on such order of the trial court, is likewise untimely. On January 27, 2003, Kater filed her second notice of appeal from the trial court's November 1, 2002 order denying her post trial motions and entering judgment in favor of the Bells. This is the appeal that is before us presently. Pursuant to Pa.R.A.P. 903(a), a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Clearly, Kater's second notice of appeal from the November 1, 2002 order and judgment is well beyond the thirty day period provided by Rule 903(a) and is,

therefore, untimely. Accordingly, we are compelled to quash Kater's appeal.

¶ 14 The Bells filed their appeal from the trial court's January 15, 2003 order granting Kater's petition to file an appeal *nunc pro tunc*. In light of our disposition above, that such order was a nullity, we further conclude that the Bells' appeal, taken from such order, is hereby dismissed as moot.

¶ 15 Appeal at 386 EDA 2003 quashed.

¶ 16 Appeal at 833 EDA 2003 dismissed as moot.